**Yuliano v Central Park W. Orthodontics P.C.**

2025 NY Slip Op 31427(U)

April 22, 2025

Supreme Court, New York County

Docket Number: Index No. 161370/2019

Judge: Shlomo S. Hagler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: __HON. SHLOMO S. HAGLER__      PART      17

*Justice*

-----------------------------------------------------------------------X

MARIE YULIANO,

                            Plaintiff,

                - v -

CENTRAL PARK WEST ORTHODONTICS P.C.,
PEDIATRIC DENTISTRY AND WEST SIDE
ORTHODONTICS, LLC d/b/a CENTRAL PARK WEST
PEDIATRIC DENTISTRY, ROBERT P. PERACCHIA, and
MARY EVE MAESTRE,

                            Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 161370/2019 |
| MOTION DATE | 05/19/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79

were read on this motion to/for          __JUDGMENT - SUMMARY__    .

    Plaintiff Marie Yuliano brings this action against defendants Central Park West

Orthodontics P.C. (CPW Orthodontics), Pediatric Dentistry and West Side Orthodontics, LLC

d/b/a Central Park West Pediatric Dentistry (CPW Pediatric) (together, the Practices), Robert P.

Peracchia (Peracchia), and Mary Eve Maestre (Maestre) (together, the Individual Defendants)

(together with the Practices, defendants) alleging that they engaged in age- and gender-based

employment discrimination in violation of the New York City Human Rights Law (the City HRL)

(Administrative Code of the City of NY § 8-101 *et seq.*). On this motion, defendants move,

pursuant to CPLR 3212, for summary judgment dismissing the complaint. For the reasons set

forth below, the motion is denied.

### Factual Background

    Peracchia co-owns CPW Pediatric, a dental practice that focuses exclusively on children

(NY St Cts Elec Filing [NYSCEF] Doc No. 50, plaintiff's response to statement of material facts,

**161370/2019 YULIANO, MARIE vs. CENTRAL PARK WEST**             Page 1 of 15
**Motion No. 001**

[* 1]

¶ 5; NYSCEF Doc No. 7, answer ¶ 14). Maestre co-owns CPW Pediatric and owns CPW Orthodontics; children comprise 95% of CPW Orthodontics' patients (NYSCEF Doc No. 30, Maestre aff, ¶ 1; NYSCEF Doc No. 50, ¶ 5). The Individual Defendants, who are married, jointly manage the Practices (NYSCEF Doc No. 7, ¶ 16). The Practices operate out of separate, adjoining suites at 327 Central Park West, New York, New York (*id.*, ¶¶ 6-7; NYSCEF Doc No. 50, ¶ 9).

Plaintiff, a female who was born in 1960, worked for defendants as an office/business manager beginning in January 2016, when she was 55 years of age, until she was terminated on November 22, 2017 (NYSCEF Doc No. 7, ¶ 2; NYSCEF Doc No. 50, ¶¶ 20 and 75, NYSCEF Doc No. 52, Leon affirmation, exhibit 1, plaintiff aff, ¶ 5). Plaintiff's duties included paying bills from an account for CPW Pediatric, an account for CPW Orthodontics, and a third account, which was used for building expenses (NYSCEF Doc No. 25, DiLorenzo affirmation, exhibit A, plaintiff tr at 18 and 20). Plaintiff testified that she placed the checks and the corresponding bills or invoices on the Individual Defendants' desks for their signature (*id.* at 18).

Plaintiff testified in or about March 2017, defendants told her "about the BMW girl who was really young and really pretty, low-cut shirts, touchy-feely with all the male customers, high heels, fancy....That's what they wanted me to do every day on the orthodontic side, be just like her" (*id.* at 33-34). Plaintiff added that Peracchia "wanted me behaving just like she was, looking like she was, all pretty and dolled up, fancy-schmancy clothes, low-cut shirts, and just be wooing these male customers into a whole different stratosphere of customer service" (*id.* at 34). Plaintiff was also tasked with implementing plans drafted by a consultant retained by defendants (*id.* at 53). This included walking the orthodontic bay each afternoon to interact with parents and help staff move cases (*id.* at 37, 43, 53-55 and 58-59). Plaintiff testified that she attempted to comply with these instructions and purchased over $1,000 in new clothing (*id.* at 40-41). The Individual

**161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No.  001**

**Page 2 of 15**

Defendants repeated their instructions to plaintiff "at least once a week, sometimes twice a week" (*id.* at 34), usually in a standing meeting with Peracchia, though Maestre was also present on occasion (*id.* at 38-39 and 49). In those meetings, Peracchia "would bring up I wasn't in the bay enough. I wasn't and [sic] tantalizing enough. I wasn't wow enough" (*id.* at 48). Peracchia made it "clear this is what he wanted me to do....This was his priority" (*id.*). Plaintiff was unaware of other staff having been instructed to act or dress in a similar manner, and staff in both Practices were aware of the change (*id.* at 37). Plaintiff never protested to anyone and believed that complaining to a co-worker was "unprofessional" (*id.* at 36-37 and 51). That said, "[t]here was no one to report [the alleged harassment] to. The only people I reported to were [the Individual Defendants]" (*id.* at 43). Plaintiff also testified that defendants were aware she was unhappy with what she had been instructed to do (*id.*).

In November 2017, the Individual Defendants met with plaintiff, accused her of cashing a $3,000 personal check, and terminated her employment (*id.* at 43, 45, 62, and 65). Plaintiff testified that they showed her "a check they both knew I could never have anything to do with" because they kept their personal checks in their home (*id.* at 45, 62 and 66). Plaintiff testified that she had never visited their residence and had never handled or had access to their personal checks (*id.* at 44 and 46). The check did not bear plaintiff's name or handwriting; she had never seen the check before; and she did not endorse it (*id.* at 45 and 63-65).

Two days after the meeting, plaintiff sent Maestre a text message (*id.* at 67-68), in which plaintiff maintained that she had been "wrongly accused" (NYSCEF Doc No. 31, Maestre affirmation, exhibit A at 1). Plaintiff recounted that she had presented Maestre with a CPW Pediatric check to sign because Peracchia was away, and that Maestre was concerned that she could not sign her own name (*id.* at 1-2). Plaintiff continued, "[a]fter that issue, I went to Dr Rob

**161370/2019   YULIANO, MARIE vs. CENTRAL PARK WEST**                    **Page 3 of 15**
**Motion No.  001**

3 of 15

[* 3]

and asked him if he could sign Ortho and you could sign pedo and PM. He sad [sic] yes you both signed on all three. My actions that day was [sic] me doing my job protecting you from signing on an account you weren't sure you signed on" (*id.* at 2-3). The check was meant "for the air conditioner repair man [sic] who we owed money to and he just randomly stopped in for a check" (*id.* at 3). Maestre responded that they would "look through all the checks to figure this out. We'll let you know if we find anything new" (*id.* at 4). At her deposition, plaintiff explained that she had given Maestre the invoice for a $200 repair, after which Maestre signed the check with Peracchia's initials (*id.* at 69-70). Plaintiff never heard back from defendants (*id.* at 68). Plaintiff stated, "I clearly couldn't be younger and prettier or I wasn't willing to be as titillating as this BMW girl would be, and I think they made this whole thing up at my expense" (*id.* at 43).

Maestre, who was born in 1967, testified that Peracchia had once discussed his BMW dealership experience with staff (NYSCEF Doc No. 26, DiLorenzo affirmation, exhibit C, Maestre 4/29/2022 tr at 46 and 268). The conversation about the "BMW Girl" centered on the positive customer service Peracchia had received, and "we were trying to encourage" all staff to provide similar customer service (*id.* at 246-247). Plaintiff's job included customer care, and this involved greeting patients and giving tours (*id.* at 279-280 and 282). Plaintiff never complained to Maestre about having to perform customer service (*id.* at 283). Maestre testified that there was no truth to plaintiff's allegations about having to dress like the BMW Girl (*id.* at 240-242) and denied that she and Peracchia told plaintiff to flirt with customers or dress provocatively (*id.* at 275). Maestre never witnessed Peracchia telling plaintiff to dress in that manner (*id.* at 251), and "[plaintiff] never dressed that way" (*id.* at 252). Maestre also testified that the children visiting their offices were usually accompanied by their mothers or their nannies (*id.* at 254-253).

**161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No.  001**

Page 4 of 15

4 of 15

[* 4]

Maestre attributed the decision to terminate plaintiff's employment to a lack of trust (*id.* at 145). Maestre testified that plaintiff came into her office on a day Peracchia was not present, "puts a check in front of me and she asks me to sign it" with Peracchia's signature, even though Maestre's name appeared on the check, as it was from a joint personal account (*id.* at 156-157, 179 and 182). Plaintiff told Maestre the check was for architectural or construction work at the office (*id.* at 174 and 182) and that "'Rob said for you,' you know, 'to sign it,' you know, 'with Rob's signature'" (*id.* at 157). Plaintiff had never visited the Individual Defendants' home where they kept their personal checks (*id.* at 310-311), and Maestre could not recall a prior occasion where she or Peracchia had used a personal check to pay for an office expense (*id.* at 203). Maestre added that she thought "it was an odd request …[and] I didn't feel good about it," but nevertheless she "scribbled Rob's signature on it" (*id.* at 158). Maestre stated that she did not know why plaintiff asked her to sign Peracchia's name since plaintiff had access to a stamp of Peracchia's signature (NYSCEF Doc No. 27, DiLorenzo affirmation exhibit C, Maestre 4/29/2022 tr at 34).

Maestre later learned that Peracchia had brought three personal checks he had signed to the office for mailing, but their accountant never received them (NYSCEF Doc No. 26 at 159 and 172). A few weeks later, Peracchia showed Maestre one of the missing checks and told her that "someone took the check, [and] washed it" (*id.* at 159-160 and 162). Maestre testified that it was "the check that … [plaintiff] put on my desk for me to forge a signature" (*id.* at 160). Maestre recounted that she spoke to plaintiff and gave her 24 hours to find the invoice for the work, but plaintiff could not produce anything and had no explanation (*id.* at 161, 189, 192 and 289-290). At that point, she and Peracchia jointly decided to terminate plaintiff (*id.* at 161).

Peracchia, who was 51 years of age at his deposition, testified that he spoke at a full staff meeting about the positive experience he had at a BMW dealership, explaining that "the customer

**161370/2019 YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No. 001**

**Page 5 of 15**

5 of 15

service experience was completely changed from the person checking me to the service person. They were completely professionally dressed....And they even had a position where there was someone just walking around making sure that everyone was being taken care of" (NYSCEF Doc No. 28, DiLorenzo affirmation, exhibit D at 16 and 222-223). Peracchia added that a woman, who was likely in her twenties, "approached me in a business suit [asking] ... have you been taken care of by your service provider" (*id.* at 226-227). The only time Peracchia discussed his experience at the BMW dealership occurred at this meeting (*id.* at 228). Peracchia could not recall speaking with plaintiff about "the BMW girl ... all I remember is discussing it with the whole team" (*id.* at 229). Regarding plaintiff's allegations, Peracchia testified that he "did not ask [plaintiff] to sexualize her appearance," "did not ask [plaintiff] to do any of that," and "I never said it" (*id.* at 220, 222 and 230). When asked whether he had discussed his BMW experience with plaintiff on a weekly basis, Peracchia expressed, "[t]hat's not true" (*id.* at 229). Peracchia recalled only asking plaintiff "to see if patients were being taken care of" (*id.* at 230). As to the dress code, Peracchia stated that administrative staff were expected to wear black business attire, but when defendants hired plaintiff, "we felt that she was professionally dressed and she could make that decision as the office manager" of dressing in a manner "that would distinguish her from the rest of the administrative team. That's what she wanted to wear" (*id.* at 233-234).

Peracchia testified that he once sent plaintiff an email explaining how he wanted her act "like a traffic director" and give great customer service (*id.* at 209) by "be[ing] more involved on the clinic floor and with the team in the afternoons[,] ... helping with patient flow, making sure that they were supported, interacting with patients" (*id.* at 208). Peracchia did not believe he had told plaintiff to speak to patients between 3:30 to 6 p.m. every day but this was a concept put in place by defendants' consultants to improve care (*id.* at 214). Plaintiff's role as a manager would

161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST
Motion No. 001

Page 6 of 15

6 of 15

[* 6]

expand by ensuring things ran smoothly (*id.* at 215). Perrachia stated that "[t]here is no walking" (*id.* at 215) but defendants expected plaintiff's presence on the floor to help staff (*id.* at 216).

Peracchia testified that in October 2016, he brought three personal checks to the office for mailing (*id.* at 84-86, 95 and 102). He "probably" gave his personal correspondence to Michelle Rosario (Rosario) or plaintiff for mailing (*id.* at 88), though he could not recall if he gave the checks to plaintiff (*id.* at 85 and 91). After their accountant did not receive the checks (*id.* at 97), Peracchia learned that a $3,000 check had been cashed (*id.* at 76, 107, 109 and 113). Peracchia did not know "Anna Holchak," the payee on the check (*id.* at 110), and he never found out how the check was cashed (*id.* at 118). Peracchia initially believed "the check was stolen and the writing removed and then forged" (*id.* at 111). Peracchia testified that he had never used a personal check to pay for a business expense, and he and Maestre had not had any construction or architectural work performed on their home during plaintiff's employment (*id.* at 133-134). Peracchia believed he had given the checks to plaintiff "[b]ecause she presented it to my wife and asked her to sign my name on it" (*id.* at 88 and 124). Peracchia testified that Maestre told him that plaintiff had presented the check to her and asked her to sign his name (*id.* at 124). Neither he nor Maestre kept their personal checks at the office (*id.* at 137), and plaintiff did not have access to the personal checks they kept in their home (*id.* at 140). Peracchia reported the incident to Citibank (*id.* at 112 and 116-117) and to the police to "make it official" (*id.* at 140), later admitting that plaintiff's decision to retain an attorney may have been a factor in his decision to file a police report (*id.* at 273 and 291). Peracchia testified that he and Maestre decided to terminate plaintiff's employment "[b]ecause there was a fraudulent check, personal check, that went missing that was posted to my account. And Eve had told me that Marie asked her to sign my name on that check" (*id.* at 130).

**161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No.  001**

Page 7 of 15

7 of 15

Rosario, who was born in 1989, worked as the office manager for both Practices until January 2016, when defendants hired plaintiff to manage CPW Orthodontics (NYSCEF Doc No. 29, DiLorenzo affirmation, exhibit E, Rosario tr at 53, 59-60 and 62). Rosario testified that she did not agree with plaintiff's allegation that plaintiff had to dress differently for customers, though Rosario admitted that she was not present for every meeting between plaintiff and the Individual Defendants (*id.* at 163). Rosario knew that plaintiff was expected to "walk around … the bay, if patients needed to schedule their next appointment, she would do it right there chair side, and she would just make sure that everything was running smoothly" (*id.* at 171-172). Rosario testified that once, after a team huddle, Peracchia discussed his positive customer service experience at a BMW dealership (*id.* at 175). Peracchia described the female BMW representative as "really great at customer service, … super friendly, and … very knowledgeable" (*id.* at 179). Peracchia did not discuss the representative's wardrobe, physical features or appearance or whether she was flirtatious (*id.* at 180-181). Rosario believed that Peracchia shared his experience at BMW as an example of great customer service (*id.* at 182). Plaintiff was not present at that meeting, which was limited to the CPW Pediatrics' team (*id.* at 177-178).

Rosario recalled that she was present when the Individuals Defendants accused plaintiff of asking Maestre to sign Peracchia's name on a check (*id.* at 122). Rosario recounted that she was shown a personal check, not a business check (*id.* at 240). She recalled that after the meeting, plaintiff told her, "'I didn't do this'" (*id.* at 124). Rosario also testified that she was not allowed to use the stamps of the Individual Defendants' signatures on checks (*id.* at 246). Two months after defendants terminated plaintiff, defendants promoted Rosario to office manager for both Practices (*id.* at 74 and 243).

161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST
Motion No.  001

Page 8 of 15

8 of 15

Plaintiff commenced this action on November 21, 2019, by filing a summons and complaint pleading two causes of action for age and gender discrimination under the City HRL. Defendants now move for summary judgment on the grounds that: (1) plaintiff cannot establish a prima facie case for age or gender discrimination; (2) defendants have furnished a legitimate, nondiscriminatory reason for terminating plaintiff's employment; and (3) there is no evidentiary route under which plaintiff may prevail on her claims. Submitted in support are affidavits, deposition transcripts, the allegedly fraudulent check, and other exhibits.

Peracchia avers that he "never dictated the type of clothes Plaintiff was expected to wear" and denies directing plaintiff or any other staff member to "'sexualize' themselves or otherwise act in any manner other than professional" (NYSCEF Doc No. 32, Peracchia aff, ¶¶ 18 and 26). Peracchia admits that he routinely referred to his BMW dealership experience, but states that he "never focused on the age, appearance, or clothing of any customer service representatives" and never commented on plaintiff's age or gender (id., ¶¶ 24 and 26). Regarding the circumstances of plaintiff's termination, Peracchia avers that he and Maestre agreed plaintiff should not have asked Maestre to sign his name on a check, and because they lost "trust" in plaintiff, he and Maestre mutually agreed to terminate plaintiff's employment (id., ¶¶ 33-34).

Maestre's affidavit contains similar averments (NYSCEF Doc No. 30, ¶¶ 1-14 and 23-24). Maestre attests that she never heard Peracchia "direct Plaintiff to 'sexualize' herself" (id., ¶ 17), and that she never commented on plaintiff's age or gender (id., ¶ 18). Maestre attests that when plaintiff, who maintained records of all invoices, was unable to "produce an invoice or the check stub record for the business check she claims she wrote" (id., ¶ 23), Maestre "lost trust in Plaintiff and her ability to manage the practice and handle our financial affairs" (id., ¶ 25). Maestre and Peracchia then mutually agreed to terminate plaintiff's employment (id., ¶ 26).

161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST
Motion No. 001

Page 9 of 15

[* 9]

Plaintiff, in response, argues that: (1) she has established a prima facie case of age and gender discrimination, (2) she was subjected to a hostile work environment, which defendants failed to address; and (3) the stated reason for her termination was pretextual. Plaintiff avers that the Individual Defendants "explicitly instructed me to sexualize my appearance for the family, guardians, and/or caretakers of patients," telling plaintiff "about a very young female employee in her twenties working for BMW doing nothing more than parading her body and flirting with male customers. They repeatedly stressed that the BMW employee was very young, very pretty, and provocatively dressed, making clear that I was none of these things" (NYSCEF Doc No. 52, Leon affirmation, exhibit 1, plaintiff aff, ¶ 8). Plaintiff further avers that she was unaware of the Individual Defendants having asked any other staff member to dress or act in a similar manner (*id.*, ¶¶ 9 and 11). Plaintiff further states that Peracchia repeatedly "harassed" plaintiff each week by commenting on "her appearance, the appearance of the BMW girl, and the expectation of titillating the family, guardians, and/or caretakers of patients with this provocative role" (*id.*, ¶ 11). As for her termination, plaintiff maintains that defendants falsely accused her of cashing a personal check even though plaintiff did not have access to the Individual Defendants' personal checks and never asked Maestre to sign Peracchia's name on any check (*id.*, ¶ 16).

Defendants, in reply, maintain that plaintiff never pleaded a hostile work environment claim in her complaint. Defendants also contend that plaintiff's claims are based on unsubstantiated allegations, as plaintiff cannot establish a prima facie case of discrimination and defendants have presented a legitimate, nondiscriminatory basis for her dismissal.

### Discussion

A party moving for summary judgment bears the burden of "mak[ing] a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to

**161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No. 001**                                                                    **Page 10 of 15**

10 of 15

[* 10]

demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 316 [2024] [internal quotation marks and citation omitted]). If the moving party meets its prima facie burden, "the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for [its] failure so to do" (*Zuckerman v City of New York*, 49 NY2d 557, 560 [1980]).

The City HRL makes it unlawful for an employer to discriminate against an employee "in compensation or in terms, conditions or privileges of employment" because of that employee's actual or perceived age or gender (Administrative Code § 8-107 [1] [a] [3]). City HRL claims are analyzed under both the burden-shifting framework articulated in *McDonnell Douglas Corp. v Green* (411 US 792 [1973]) (*McDonnell Douglas*) and the mixed motive framework (*Hamburg v New York Univ. Sch. of Medicine*, 155 AD3d 66, 72-73 [1st Dept 2017]). A defendant moving for summary judgment dismissing a City HRL claim "bears the burden of showing that, based on the evidence before the court and drawing all reasonable inferences in plaintiff's favor, no jury could find defendant liable under any of the evidentiary routes: under the *McDonnell Douglas* test, or as one of a number of mixed motives, by direct or circumstantial evidence" (*Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 41 [1st Dept 2011], *lv denied* 18 NY3d 811 [2012]). The plaintiff may defeat such motion by furnishing "some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete" (*id.*), or by showing that the defendant "was motivated, at least in part, by discriminatory bias" (*McIntosh v Department of Educ. of the City of N.Y.*, 202 AD3d 481, 482 [1st Dept 2022]).

**161370/2019  YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No.  001**

Page 11 of 15

11 of 15

It is well settled that "[d]isputed factual issues, especially those that require resolution of credibility issues, are generally unsuitable for summary adjudication" (*Franco v Hyatt Corp.*, 189 AD3d 569, 570 [1st Dept 2020]). In this case, plaintiff's claims for age and gender discrimination are predicated upon the allegation that defendants repeatedly instructed plaintiff to "be just like" the BMW Girl (NYSCEF Doc No. 25 at 34). Defendants, however, have adamantly and strenuously denied having engaged in the alleged conduct underlying plaintiff's claims. As such, whether defendants had ever instructed plaintiff to "be just like" the BMW Girl is in sharp dispute, which creates an issue of fact as to credibility that cannot be resolved on summary judgment (*see McRedmond v Sutton Place Rest. & Bar, Inc.*, 95 AD3d 671, 672 [1st Dept 2012] ["Hanafy's denial that he engaged in any of the alleged conduct and the other individual defendants' denial of any knowledge of such conduct raises genuine credibility issues that the court may not decide on a motion for summary judgment"]). Accordingly, defendants' motion for summary judgment dismissing the age and gender discrimination claims is denied.

To the extent plaintiff claims to have pled a cause of action for hostile work environment on the basis of age and gender, the complaint does not contain a separate heading alleging hostile work environment as a standalone cause of action (NYSCEF Doc No. 78, oral argument 11/2/2023 tr at 29; oral argument 1/9/2024 tr at 33). Indeed, "a claim for hostile work environment is 'a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation'" (*Mejia v Roosevelt Is. Med. Assoc.*, 31 Misc 3d 1206[A], 2011 NY Slip Op 50506[U], *5 [Sup Ct, NY County 2011], *affd* 95 AD3d 570 [1st Dept 2012], quoting *Magadia v Napolitano*, 2009 WL 510739, *17 [SD NY, Feb. 26, 2009, No. 06 Civ. 14386 (CM)]; *see also Richards v Gateway Frontline Servs., Inc.*, 2011 NY Slip Op 34111[U], *3 [Sup Ct, NY County 2011], citing *Forrest v Jewish Guild for the Blind*, 3 NY3d 295,

**161370/2019 YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No. 001**

**Page 12 of 15**

305 [2004] [a hostile work environment claim is separate from a discriminatory employment claim]; *but see Garcia v City of New York*, 2023 NY Slip Op 32966[U], * 10 [Sup Ct, NY County 2023], quoting *Cardwell v Davis Polk & Wardwell LLP*, 2020 WL 6274826, *29 [SD NY, Oct. 24, 2020, No. 1:19-cv-10256-GHW] ["[t]here is no separate 'hostile work environment' claim under the NYCHRL"]).

Ordinarily, a plaintiff cannot plead a new theory of liability in opposition to a motion for summary judgment (*see Vega v Kirschenbaum*, 209 AD3d 458, 459 [1st Dept 2022] [stating that the plaintiff could not raise a new theory of liability for the first time in opposition to a summary judgment motion]).  The complaint herein alleges that plaintiff "was expected to 'Wow' the customers with enticing/tantalizing smiles, pretty clothes, and high heels" (NYSCEF Doc No. 1, ¶ 27); that "[t]hese offensive and discriminatory comments were pervasive and continuous for the remainder of Plaintiff's employment with Defendants" (*id.*, ¶ 31); that plaintiff was subjected to "over seven months of continuous, deplorable remarks about [her] appearance, gender and age" (*id.*, ¶ 32); and that Peracchia "relentlessly harassed [plaintiff] – multiple times per week – about … her appearance, the appearance of the BMW girl, and the expectation of her titillating patients with this provocative role" while "'working the bay'" (*id.*, ¶ 29).

The City HRL must be "construed liberally to accomplish its uniquely broad and remedial purpose[ ]" (*Hamburg*, 155 AD3d at 81 [internal quotation marks and citation omitted]).  As such, a complaint alleging a claim under the City HRL "need only give 'fair notice' of the nature of the claim and its grounds" (*Vig v New York Hairspray Co., L.P.*, 67 AD3d 140, 145 [1st Dept 2009]; *see also Kirby v Carlo's Bakery 42nd & 8th LLC*, 212 AD3d 441, 442 [1st Dept 2023] ["[a]lthough plaintiff's first cause of action is labeled as one for 'hostile workplace,' Supreme Court was not bound by that designation and plaintiff has sufficiently stated a cause of action for employment

discrimination under both the New York State and New York City Human Rights Laws"]; *cf. Melendez v New York City Tr. Auth.*, 204 AD3d 542, 544 [1st Dept 2022] ["[t]he complaint cannot fairly be read to include a separate hostile work environment claim based on plaintiff's post-complaint treatment, and plaintiff cannot properly raise one in opposition to summary judgment"]). In view of these principles, the complaint nominally pleads a claim for hostile work environment under the City HRL.

A single offensive remark or comment in some circumstances may suffice to state a claim for a hostile work environment under the City HRL (*see Biggan v City of New York*, 192 AD3d 498, 499 [1st Dept 2021]). Here, plaintiff avers that defendants "explicitly instructed [her] to sexualize [her] appearance" and "relentlessly harassed" her for failing to do so (NYSCEF Doc No. 52, ¶¶ 8 and 11), whereas defendants repeatedly denied that these incidents ever occurred (NYSCEF Doc No. 30, ¶¶ 14 and 18; NYSCEF Doc No. 32, ¶¶ 18, 22 and 26-27). This court recognizes that defendants did not address the hostile work environment claim, of which they were not aware, in their initial moving papers (oral argument 1/9/2024 tr at 30-32) and that plaintiff did not move to amend her complaint to clarify her causes of action, despite having been afforded the opportunity to do so (*id.* at 34). Nevertheless, given the conflicting testimony and averments as to whether any allegedly offensive comments were even made, it would be improper to determine issues of credibility on this motion (*see McRedmond*, 95 AD3d at 672).

Accordingly, it is

**161370/2019 YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No. 001**

**Page 14 of 15**

14 of 15

[* 14]

ORDERED that defendants' motion for summary judgment dismissing plaintiff's complaint is denied.

4/22/25
_____
DATE

_____
SHLOMO S. HAGLER, J.S.C.

CHECK ONE:

| | | | | |
|---|---|---|---|---|
| ☐ CASE DISPOSED | | | ☒ NON-FINAL DISPOSITION | |
| ☐ GRANTED | ☒ DENIED | | ☐ GRANTED IN PART | ☐ OTHER |

APPLICATION: ☐ SETTLE ORDER ☐ SUBMIT ORDER

CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

**161370/2019 YULIANO, MARIE vs. CENTRAL PARK WEST**
**Motion No. 001**

Page 15 of 15